IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GAIL H. TIFT, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3370 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| NSP MEDICAL DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 18, the Motion for Immediate Protection from Defendants and Imminent Harm filed by the plaintiff, Gail H. Tift, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"). The court has construed filing no. 18 as a Motion for Temporary Restraining Order ("TRO"). Also before the court are filing no. 23, the Motion to Dismiss filed by defendant-NSP Medical Department; filing no. 28, the plaintiff's Motion for Extension of Time; and filing no. 40, the plaintiff's Motion to Compel.

**Eighth Amendment**

The plaintiff has sued two physicians and a physician's assistant who provide medical care to inmates at the Nebraska State Penitentiary ("NSP"). He has also named the NSP Medical Department as a defendant. The plaintiff states that he has thrombophilia, a genetic blood coagulation disorder for which treatment exists, but the treatment is expensive. The plaintiff has been advised that the disorder can be fatal if not treated appropriately. While at the DCS Diagnostic and Evaluation Center, the plaintiff received two daily injections. However, now that he is housed at the NSP, he believes his treatment has been curtailed for reasons of cost rather than in his best medical interests. In filing no. 18, the plaintiff states that he has recently developed bleeding rashes, possibly as a result of the thrombophilia or as a side effect of his medication. The plaintiff expresses fear and concern about his medical condition and treatment.

The Eighth Amendment to the United States Constitution requires prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter,

1

and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). For example, a prisoner's Eighth Amendment rights are violated if prison officials show "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-07 (1976). More specifically, a viable Eighth Amendment claim consists of an objective component and a subjective component. Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). See also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997): "To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." Id.

The objective element of an Eighth Amendment claim requires a deprivation which, viewed objectively, is sufficiently serious, that is, "the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities;' or the prison official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'" Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation omitted). In the context of medical care, for example, a medical need is serious if it "has been diagnosed by a physician as requiring treatment," or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstead, 73 F.3d 174, 176 (8th Cir. 1995) (citation omitted).

The subjective element of an Eighth Amendment claim requires that an official act with deliberate indifference to inmate health or safety. Deliberate indifference means that the official both was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Deliberate indifference describes a mental state more blameworthy than negligence. A plaintiff is not required to show that a defendant acted for the very purpose of causing harm or with knowledge that harm will certainly result. Id., 511 U.S. at 835. However, "deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003). See also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003): "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'" (Citation omitted.) Therefore, to

2

satisfy the subjective component requires a finding of actual knowledge on the part of a defendant that the plaintiff faces a substantial risk of serious harm. See Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997): "A prison official may be held liable under the Eighth Amendment if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

**Injunctive Relief**

In the Eighth Circuit, a court must balance four factors (the "Dataphase factors") when determining whether to issue a TRO or preliminary injunction. The Dataphase factors are:

1. the threat of irreparable harm to the movant;
2. the balance between the harm to the movant and any injury that temporary injunctive relief would inflict on the nonmoving party should the injunction issue;
3. the likelihood of success on the merits; and
4. the public interest.

See, e.g., Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999); Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995); Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (*en banc*). The burden of proving that preliminary injunctive relief should be granted "rests entirely with the movant." Goff v. Harper, 60 F.3d at 520. "[F]or an injunction to issue 'a right must be violated' and ... 'the court must determine' whether 'a cognizable danger of future violation exists and that danger must be more than a mere possibility.'" Id. at 521 (citation omitted).

In the prison context, the availability of injunctive relief is limited by 18 U.S.C. § 3626, as amended by the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626(a)(1)(A) states:

> (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the

3

relief.

In filing nos. 25 and 26, the defendants have responded to the plaintiff's Motion for Immediate Protection, explaining that the plaintiff's thrombophilia is indeed a rare and serious blood clotting disorder for which the defendants have treated the plaintiff since his entry into custody.  In addition, DCS medical personnel sent the plaintiff to a specialist in hematology outside of DCS for diagnosis and recommendations in November and December of 2004. In his affidavit, Dr. Casebolt of the NSP states that the recommendations for the plaintiff's treatment made by the independent hematologist have been incorporated into the plaintiff's medical regimen at the NSP.  The plaintiff receives daily doses of a medication which is a well-known blood-thinner.  The doctors changed medications after the plaintiff complained of an allergic reaction to his former blood-thinner. In addition to his daily injections, the plaintiff receives weekly blood tests to determine if any adjustment to the dosage of his medicine would be advisable.  The medications necessary to treat the plaintiff's disorder are not without side effects, and the plaintiff has developed rashes and acne.  He has been advised to use topical medications and improved personal hygiene to counteract the skin problems.

While it is understandable that the plaintiff may have fears about his congenital condition and the side effects he has suffered from his medications, he has presented no factual basis in support of his claim that the medical personnel at the NSP are violating the United States Constitution.  On the contrary, it appears that the plaintiff is receiving a considerable amount of well-intentioned medical attention.

Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of the Eighth Amendment for cruel and unusual punishment.  A plaintiff who alleges no more than his disagreement with the course of treatment provided to him does not demonstrate an Eighth Amendment violation.  See, e.g., Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002): "At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation."  Accord Harris v. Thigpen,  941 F.2d 1495, 1505 (11th Cir. 1991): "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual

4

punishment." See also Kayser v. Caspari, 16 F.2d 280 (8th Cir. 1994) (the plaintiff's disagreement with the course of treatment provided to him is not a sufficient basis for an Eighth Amendment claim).

In this case, the plaintiff is receiving diagnostic care and treatment. He complains about his treatment, but he has made no showing that an alternate form of treatment would benefit him. In fact, the record reflects that he is being closely monitored for his congenital blood condition. The record is devoid of any support for the claim that the defendants have deliberately disregarded an excessive risk to the plaintiff's health or rendered medical care "'so inappropriate as to evidence intentional maltreatment ....'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(citation omitted). Accordingly, filing no. 18, the plaintiff's Motion for Immediate Protection from Defendants and Imminent Harm, is denied.

## Defendants

The only defendant on whom a summons has been served is the NSP Medical Department. However, as Magistrate Judge F.A. Gossett explained in the Order on Initial Review (filing no. 14), "the medical department of NSP and other units within DCS lack the capacity to sue and be sued in their own names. Therefore, the 'NSP medical department' will be liberally construed as the State of Nebraska, acting through DCS, an agency of the State." In filing no. 23, the NSP Medical Department (State of Nebraska) moves for dismissal on grounds which are correct under applicable law.

State sovereign immunity, recognized and preserved by the Eleventh Amendment to the United States Constitution, prohibits a private party from suing the State or its agencies and instrumentalities, except insofar as the State or the Congress of the United States has abrogated the state's sovereign immunity. See, e.g., Morstad v. Department of Corrections and Rehabilitation, 147 F.3d 741, 744 (8th Cir. 1998): "[A]bsent a waiver, the Eleventh Amendment immunizes the state and its officials from § 1983 liability." See also Burk v. Beene, 948 F.2d 489, 492-93 (8th Cir. 1991): "Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'..." (Citations omitted.) No waiver of sovereign immunity applies to this case.

Furthermore, "[a] State's constitutional interest in its sovereign immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Pennhurst

5

State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (emphasis in original).  See also Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999): "This court has previously held that the State of Nebraska has not consented to federal court jurisdiction." See also Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals."  Accord Trevelen v. University of Minnesota, 73 F.3d 816, 818 (8th Cir. 1996):  "The Supreme Court has interpreted the Eleventh Amendment to bar actions in federal court against a state by its citizens."  The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. Board of Trustees of Univ. of Alabama v. Garrett,  531 U.S. 356, 363 (2001).  Thus, filing no. 23, the Motion to Dismiss filed by defendant-NSP Medical Department, is granted.

THEREFORE, IT IS ORDERED:

1.     That filing no. 18, the plaintiff's Motion for Immediate Protection from Defendants and Imminent Harm, is denied;

2.     That filing no. 23, the Motion to Dismiss filed by defendant-NSP Medical Department, is granted;

3.     That, as no other defendants have been served with process and brought before the court, the plaintiff's complaint and this action will be dismissed without prejudice;

4.     That filing no. 28, the plaintiff's Motion for Extension of Time, and filing no. 40, the plaintiff's Motion to Compel, are denied as moot; and

5.     That a separate judgment will be entered accordingly.

January 23, 2006.              BY THE COURT:

                               s/ *Richard G. Kopf*
                               United States District Judge